**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

**XANTHIA LEWIS,**

**JUDITH RALEY ROSE,**                                    Index No.: 2:25-cv-595

**Individually and on Behalf of All Other**              Date Filed: February 3, 2025
**Persons Similarly Situated**

        Plaintiffs,

      v.                                           **COMPLAINT**

**PRIVATUS CARE SOLUTIONS, INC**
                                                         **DEMAND FOR JURY TRIAL**
        Defendant.
-------------------------------------------------------------X

NOW COMES Plaintiff XANTHIA LEWIS ("Plaintiff Lewis") and Plaintiff JUDITH

RALEY ROSE ("Plaintiff Rose") (hereinafter referred to collectively as "Plaintiffs"), by and

through their attorneys, Mansell Law LLC, and proffer this Collective and Class Action Complaint

for damages against Defendant Privatus Care Solutions, Inc. ("Defendant").

### NATURE OF ACTION

1.    This action seeks monetary, declaratory and injunctive relief to redress violations

under the Fair Labor Standard Act ("FLSA") and New York Labor Law ("NYLL").

2.    Defendant has willfully engaged in violations of the FLSA and NYLL by: (a)

failing to pay Plaintiffs overtime compensation at one and one-half times their regular rate of pay

under the FLSA and NYLL for time worked in excess of 40 hours in a workweek, and (b) failing

to provide Plaintiffs with Wage Notices and Wage Statements in violation of NYLL § 195.

3.    Plaintiffs bring this action on behalf of themselves and on behalf of those similarly

situated, and Plaintiffs have given written consent to bring this action to collect unpaid overtime

compensation under the FLSA. The consent is filed along with the Complaint pursuant to 29 U.S.C. § 216(b).  (Attached as Exhibit A).

## JURISDICTION AND VENUE

4.      This action is brought by Plaintiffs to redress violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and New York Wage Theft Prevention Act.

5.      This Court has original federal question jurisdiction over this controversy pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343.

6.      This Court has supplemental jurisdiction over this controversy under the New York Labor Law pursuant to 28 U.S.C. § 1367(a), as they are so related in this action within such original federal question jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant conducts business in this judicial District and substantial parts of the acts and/or omissions giving rise to the claims herein alleged occurred in this judicial District.

## THE PARTIES

8.      Plaintiff Lewis is an individual, a United States citizen, and a resident of Amityville, New York.

9.      Plaintiff Rose is an individual, a United States citizen, and a resident of Wheatley Heights, New York.

10.     At all times relevant herein, Plaintiffs were "employees" of Defendant as that term is defined by the FLSA and NYLL as it relates to the claims herein.

11.     At all times relevant herein, Plaintiffs were "residential employees" of Defendant as that term is defined by NYLL as it relates to the claims herein.

12.     Defendant Privatus Care Solutions, Inc. is a Delaware corporation with multiple locations, including one in New York City.

13.     Defendant is a caregiving company and provides home care and other aide services to its clients, primarily senior individuals.

14.     Defendant employs Live-In Caregivers to perform manual labor and provide services to its clients.

15.     Upon information and belief, Live-In Caregivers are paid a day rate.

16.     Upon information and belief, Defendant employs more than 50 total Live-In Caregivers at any given time.

17.     At all times relevant herein, Defendant has been Plaintiffs' "employer" as that term is defined by the FLSA and NYLL.

18.     Defendant has been engaged in interstate commerce or in the production of goods for commerce, and/or the business activities of Defendant constituted an enterprise engaged in interstate commerce within the meaning of the FLSA, and/or Defendant have an annual dollar volume of sales or business of at least $500,000 during the time periods relevant herein.

19.     At all times relevant herein, Defendant was fully aware of the fact that it was legally required to comply with the FLSA and NYLL.

## STATEMENT OF FACTS

20.     Plaintiff Lewis was employed by Defendant on and off from May 2021. At the end of 2023, Plaintiff began working as a Live-In Caregiver.

21.     Plaintiff Rose has been employed by Defendant since 2020 as a Live-In Caregiver.

22.     As Live-In Caregivers, Plaintiffs work at the homes of Defendant's clients in Long Island, New York. Plaintiffs' duties include assisting clients with their activities of daily living, everyday needs, preparing food, cleaning the home, buying groceries, performing housekeeping work, reminding clients to take medication and exercise, running errands, taking clients to doctor visits, and providing other help as requested.

23.     Plaintiffs are non-exempt employees. Plaintiffs' schedule consists of several 24-hour shifts per week.

24.     Per the agreement with Defendant, it pays Plaintiffs a "daily rate," which limits their remuneration to 13 work hours per day. The current Plaintiffs' daily rate is $267. Before January 22, 2024, Plaintiffs were paid at the daily rate of $250.

25.     Defendant paid the same daily rate even when Plaintiffs worked less than 40 hours per workweek.

26.     Plaintiffs' Wage Notices state that the employee's pay rate is "$267 per day (Live-In)". Additionally, Defendant modified the New York State Department of Labor's Wage Notice form and put the words "N/A" and "Live-In overtime rate is included in the per day rate of pay" in Section 7 (Overtime Pay Rate).

27.     At all times relevant herein, Plaintiffs often worked more than 40 hours per workweek.

28.     When Plaintiffs worked over 40 hours per workweek, including the limitation of 13 hours per workday, Defendant renumerated Plaintiffs for all hours worked over 40 based on their "daily rate" without paying at one and one-half times their regular pay rate.

29.     Given the current daily pay rate of $267, Plaintiffs' hourly rate is around $20.54 ($267 daily rate / 13 hours per day).

30. Defendant improperly manipulated the Plaintiffs' hourly rate in their paystubs to ensure that the payment for overtime hours worked was included in their daily rate. As a result, Plaintiffs are being paid a reduced "straight time" rate for their overtime hours.

31. For example, on the week of January 21, 2024, Plaintiff Lewis worked five days, totaling 65 hours and was paid $1,335.33. With a day rate of $267 and working 65 hours, Plaintiff Lewis should have been paid $1,335 for her regular rate and $256.75 for her overtime rate. If she was paid $1,335 for all hours worked, it would make her regular rate $20.54 and she would be owed "half-time" for all hours worked over 40, or $10.27 for each of the 25 overtime hours. Instead, Defendant manipulated Plaintiff Lewis' hourly rate by decreasing it to $17.23 and her overtime rate by reducing it to $25.84 to avoid paying her for overtime hours at one and one-half times her regular pay rate and illegally including her overtime hours in the daily rate.

32. The situation in the preceding paragraph occurred every week where Plaintiff Lewis worked more than 40 hours, including but not limited to, the weeks of January 28, 2024, February 4, 2024, February 11, 2024, February 18, 2024, February 25, 2024, March 3, 2024, August 25, 2024, and many others.

33. Defendant applied the same unlawful scheme to Plaintiff Rose's paystubs to avoid paying her for overtime hours at one and one-half times her regular rate.

34. Defendant did not pay Plaintiff Rose at one and one-half times regular rate for hours worked in excess of 40 per a workweek, applying the same manipulations on the weeks of December 13, 2020, January 31, 2021, February 7, 2021, March 7, 2021, April 4, 2021, May 15, 2022, May 22, 2022, May 29, 2022, June 5, 2022, June 12, 2022, June 19, 2022, June 26, 2022, July 3, 2022, July 20, 2022, August 28, 2022, September 4, 2022, December 11, 2022, March 12,

2023, April 23, 2023, November 26, 2023, December 3, 2023, December 31, 2023, January 14, 2024, January 21, 2024 and many others.

35. For example, on the week of December 11, 2022, Plaintiff Rose worked seven days, totaling 91 hours, and was paid $1,751.00. At that time, her day rate was $250. With a day rate of $250 and working 91 hours, Plaintiff Rose should have been paid $1,750 for her regular rate and $256.75 for her overtime rate. If she was paid $1,750 for all hours worked, it would make her regular rate $19.23 and she would be owed "half-time" for all hours worked over 40, or $9.62 for each of the 41 overtime hours. In her paystub, Defendant changed her hourly rate to $15.03 and her overtime rate to $22.54 to unlawfully avoid paying overtime.

36. During the relevant time period, Defendant employed other Live-In Caregivers, like Plaintiffs, who also were not paid their overtime at the one and one-half times rate.

37. Throughout the time period, such individuals worked more than 40 hours per week and have not been paid overtime premium wages of one and one-half times their regular hourly rate (or at time and one half the minimum wage rate) for their overtime hours worked.

38. Defendant manipulated the hourly rates of these individuals to illegally include overtime pay in the daily rate to avoid paying overtime wages at a one and one-half times rate.

39. During the time period, Plaintiffs and the similar Live-In Caregivers-employees of Defendant were not specifically correctly notified by Defendants of the specific hourly rate or overtime pay rate as required by the New York Wage Theft Prevention Act.

## **KNOWING AND INTENTIONAL ACTS**

40. All of the preceding paragraphs are realleged as if fully rewritten herein.

41.     On or about January 7, 2024, Plaintiff Lewis emailed Defendant's payroll manager, Marvin Turner. She complained to him that her pay rate had decreased in retrospect to the hours she worked.

42.     On or about January 8, 2024, Mr. Turner responded: "[y]our payroll is correct… [y]our daily rates *will not look correct as all hours over 40 need to be shown as overtime. You are not paid overtime for a live in case, so this throws the daily rate off.*" [emphasis added]

43.     On or about January 22, 2024, Plaintiff Lewis sent another email to Mr. Turner, raising the same concern that she was not correctly paid overtime.

44.     On or about January 22, 2024, Mr. Turner responded to her: "You are not being paid hourly; you are working on a live in shift which pays a daily rate. *You are not paid OT, when being paid a daily rate* [emphasis added]."

45.     Shortly thereafter, Mr. Turner sent another email: "My wording was wrong. *The OT you would make is already in the daily rate of pay* [emphasis added]. Your daily rate of $267 per day includes OT."

46.     On or about January 23, 2024, Plaintiff Lewis responded to Mr. Turner. She again disagreed with him and, among other things, wrote, "I do not get paid for a full 24 hours. I get paid for 13 hours per day and according to the Labor Laws as a Live-in Caregiver. In working, a 65 hour work-week (13 paid hours x 5 days), I exceed 40 hours. Therefore, again I am entitled to overtime pay according to the Federal and State Department of Labor Laws."

47.     The same day, Mr. Turner answered with the following email: "You are being paid 65 hours. If you look at your check, 40 hours at regular pay and 25 are in OT.  The gross amount will match your daily rate of 267 per day. 5 days at 267 = 1,335.00.  Your gross pay must be at

1,335.00 for the five days, which it is. Again, you are being paid a daily rate, not an hourly rate as a live in."

48.     Therefore, Defendant has knowingly, intentionally, and willfully included overtime pay in the daily rate.

49.     Defendant has knowingly, intentionally, and willfully manipulated Plaintiff's pay rate and applied improper arithmetic to ensure that they are not being paid overtime at one and one-half times their regular rate.

50.     Defendant has knowingly, intentionally and willfully committed the acts alleged herein.

51.     Defendant has not acted in good faith.

52.     Defendant has known that the nonpayment of overtime pay would financially injure Plaintiffs.

53.     Defendant has knowingly, intentionally, and willfully modified the New York State Department of Labor's Wage Notice form and added the words "Live-In overtime rate is included in the per day rate of pay".

54.     Therefore, Defendant did not provide Plaintiffs at the time of their hire or thereafter with a correct written statement of their overtime hourly pay rate.

55.     Additionally, Defendant did not provide Plaintiffs with full and accurate Wage Statements when wages were paid to conceal Defendant's wrongdoing.

### FIRST CAUSE OF ACTION.
**FLSA Collective Action, 29 U.S.C. §201, *et seq*. - Failure to Pay Overtime**

56.     All of the preceding paragraphs are realleged as if fully rewritten herein.

57.     Plaintiffs bring this FLSA claim pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of themselves and all other Similarly Situated Persons ("SSPs") of the opt-in class, which includes:

**All current and former Live-In Caregivers employed by Defendant during the 3 years prior to the date of filing this Complaint through the date of conditional certification, who were paid a day rate and did not receive overtime compensation for hours worked in excess of 40 per workweek.**

58.     Upon information and belief, in the three years prior to the date of filing this Complaint, Defendant has employed more than 50 Live-In Caregivers.  These other Live-In Caregivers are similarly situated to Plaintiffs and are referred to herein as Similarly Situated Persons or "SSPs."

59.     This action is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation withheld in violation of the FLSA.  Plaintiffs are representatives of all Live-In Caregivers employed by Defendant, and Plaintiffs are acting on behalf of the interests of the SSPs as well as on behalf of their own interests in bringing this action.

60.     The SSPs are known to Defendant and are readily identifiable through Defendant's payroll records.  These individuals may readily be notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, interest, attorneys' fees and costs under the FLSA.

61.     Plaintiffs and the SSPs are paid on an hourly basis.

62.     Plaintiffs and the SSPs are not exempt from the overtime requirements of the FLSA.

63.     Plaintiffs and the SSPs are not paid an overtime premium for all hours worked over 40 in a workweek.

64.    Defendant was aware that Plaintiffs and the SSPs regularly worked more than 40 hours per week, but were not receiving overtime compensation at one and one-half times their regular rate of pay for hours worked in excess of 40 per week.

65.    For example, during the workweek of February 11, 2024, Plaintiff Lewis worked more than 40 hours but was not paid in full at one and one-half times her regular rate of pay for all hours worked over 40 during that workweek.

66.    Plaintiff Lewis worked more than 40 hours for multiple weeks, as specified in section **Error! Reference source not found.** of this Complaint, without proper overtime pay.

67.    Similarly, during the workweek of December 11, 2022, Plaintiff Rose worked more than 40 hours but was not paid in full at one and one-half times her regular rate of pay for all hours worked over 40 during that workweek.

68.    Plaintiff Rose worked in excess of 40 hours for multiple weeks, as specified in section 34 of this Complaint, without proper overtime pay.

69.    Defendant knew or should have known that it was required to pay Plaintiffs and the SSPs at an overtime premium for all hours worked in a workweek in excess of 40.

70.    During the past three years, Defendant has knowingly and willfully failed to pay Plaintiffs and the SSPs an overtime premium for all hours worked over 40 in a workweek.

71.    Defendant would also arbitrarily adjust Plaintiffs' and SSPs regular rate and overtime rate.

72.    Defendant's refusal to properly compensate Plaintiffs and SSPs for their overtime work, as required by the FLSA, was willful. This is demonstrated by Defendant's failure to provide accurate Wage Notices and Wage Statements during their employment and Defendant's continued assertions that payroll is correct and overtime rate is included in the daily rate.

73.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the SSPs have suffered and continue to suffer damages and are entitled to recover unpaid wages, liquidated damages, interest, attorneys' fees and costs, and all other remedies available under the FLSA.

**SECOND CAUSE OF ACTION**
**NYLL Class Action, Article 6 §190, *et seq*. - Failure to Pay Overtime**

74.     All of the preceding paragraphs are realleged as if fully rewritten herein.

75.     Plaintiffs bring this NYLL claim pursuant to Article 6 §190, *et seq*. as a representative action on behalf of themselves and all other Similarly Situated Persons of the class, ("NYLL SSPs") which includes:

> **All current and former Live-In Caregivers employed by Defendant during the 6 years prior to the date of filing this Complaint through the date of conditional certification, who were paid a day rate and did not receive overtime compensation for hours worked in excess of 40 per workweek.**

76.     Upon information and belief, in the six years prior to the date of filing this Complaint, Defendant has employed more than 50 Live-In Caregivers.  These other Live-In Caregivers are similarly situated to Plaintiffs and are referred to herein as NYLL Similarly Situated Persons or "NYLL SSPs."

77.     Under NYLL, Plaintiffs and SSPs are Defendant's employees.

78.     This action is brought as a class action pursuant to Article 6 §190, et seq. as to claims for overtime compensation withheld in violation of the NYLL.  Plaintiffs are representative of all Live-In Caregivers employed by Defendant, and Plaintiffs are acting on behalf of the interests of the NYLL SSPs as well as on behalf of their own interests in bringing this action.

79.     The NYLL SSP class is so numerous that joinder of all members is impracticable.

80.     The questions of law and fact common to the NYLL SSP class predominate over any questions affecting only individual members. The questions of law and fact include, but are

not limited to (1) whether Defendant maintains a common policy and practice of paying for work performed in excess of 40 hours in a workweek at the employees' regular hourly rate; and (2) whether Defendant failed to pay overtime compensation for all hours worked in excess of 40 hours in a week.

81.    The claims of Plaintiffs are typical of the claims of the NYLL SSP class, because Plaintiffs and the NYLL SSP class are all current or former employees of Defendant who performed work related to the operation of Defendant's caregiving business, who were paid on an daily basis, and sustained damages, including the underpayment of wages as a result of Defendant's policy and practice of failing to pay Plaintiffs and NYLL SSP class members overtime compensation for all hours worked in excess of 40 in each workweek. The Plaintiffs and NYLL SSP class members have thus sustained similar injuries as a result of Defendant's actions. The defenses that Defendant is likely to assert against Plaintiff's claims are typical of the defenses that Defendant are likely to assert against the class.

82.    Plaintiffs and their counsel will fairly and adequately protect the interests of the NYLL SSP class. Plaintiffs have retained counsel experienced in complex wage and hour litigation.

83.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action will prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendant's unlawful policies and practices.

### THIRD CAUSE OF ACTION
**N.Y. Lab. Law, Art. 6 § 195(1) and (3) – Wage Theft Prevention Act**

84.    All of the preceding paragraphs are realleged as if fully rewritten herein.

85.    NYLL requires that employers provide employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of

hiring, a notice containing the following information:  the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;  the regular pay day designated by the employer; the name of the employer;  any "doing business as" names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  and the telephone number of the employer. NYLL Art. 6 § 195(1).

86.    NYLL also requires that employers furnish each employee with a statement with every payment of wages, listing the following:  the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone number of employer;  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage;  and net wages.  For all employees who are not exempt from overtime compensation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. NYLL Art. 6 § 195(3).

87.    Wage Notice, provided by Defendant to Plaintiffs and SSPs, does not specify their overtime rate. Instead, Defendant unlawfully amended the New York State Department of Labor's Wage Notice form and added the words "Live-In overtime rate is included in the per day rate of pay".

88.    Wage Statements, provided by Defendant to Plaintiffs and SSPs, do not properly list their regular and overtime rates of pay since Defendant manipulated hourly rates and applied

improper arithmetic to avoid paying for hours worked in excess of 40 per workweek at one and one-half rate of pay.

89.    Therefore, Defendant has willfully failed to supply Plaintiffs and SSPs with an accurate Wage Notice and Wage Statements as required by NYLL, Article 6, § 195.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable as of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs are entitled to and prays for the following relief:

A.    As to Count I, certification as a collective action to all SSPs and appointment of Plaintiff Lewis and Plaintiff Rose and their counsel to represent the FLSA Class; enter an order directing Defendant to pay into a common fund for the benefit of Plaintiffs and all other members of the FLSA Class the total amount of damages to which Plaintiffs and the class are entitled, including unpaid wages, unpaid overtime, liquidated damages, pre-judgment and post-judgment interest, costs and expenses of the litigation and administration of the common fund, and attorney's fees; injunctive relief for Defendant to cease violations of the FLSA; and such other or additional relief deemed appropriate by the Court and available under the FLSA.

B.    As to Count II and III, certification as a class action to all SSPs and appointment of Plaintiff Lewis and Plaintiff Rose and their counsel to represent the NYLL Class; enter an order directing Defendant to pay into a common fund for the benefit of Plaintiffs and all other members of the NYLL Class the total amount of damages to which Plaintiffs and the class are entitled, including unpaid wages, unpaid overtime, liquidated damages, pre-judgment and post-judgment interest, costs and expenses of the litigation and administration of the common fund, and attorney's

fees; injunctive relief for Defendant to cease violations of the NYLL; and such other or additional relief deemed appropriate by the Court and available under the NYLL.

C.      A jury trial on these issues to determine liability and damages.

D.      A declaratory judgment that Defendant's practices complained of herein are unlawful and in violation of the Fair Labor Standards Act and New York Labor Laws; and any other applicable statute or regulation;

E.      An injunction against Defendant and any of its representatives from engaging in each of the unlawful practices, policies and patterns described in the causes of action set forth in this Complaint;

F.      A judgment for Plaintiffs and against Defendant for compensation for unpaid overtime and withheld wages due to Plaintiffs under the New York Labor Law, and, as liquidated damages, an additional amount equal to 100% of the total monies due Plaintiffs;

G.      An award of prejudgment and post judgment interest;

H.      A judgment for Plaintiffs against Defendant for attorneys' fees and costs pursuant to the Fair Labor Standards Act and New York Labor Law;

I.      Such other legal and equitable relief as this Court deems appropriate.

Dated: New York, New York
February 3, 2025

Respectfully submitted,

*/s/Greg Mansell*
Greg R. Mansell
(*Greg@MansellLawLLC.com*)
Carrie J. Elrod
(*Carrie@MansellLawLLC.com*)
**Mansell Law, LLC**
85 8th Ave., 6M
New York, NY 10011
Ph: (646) 921-8900
*Counsel for Plaintiff*